MUTCHNICK et al. v. FRIEDMAN et al.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

BROKERS (§ 88*)—CONTRACTS—EVIDENCE—QUESTION FOR JURY.

In an action by a broker for commissions on a sale of real estate, evidence *held* to require submission to the jury of the issue whether there was an express contract to pay commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 128, 129; Dec. Dig. § 88.*]

Appeal from Trial Term, New York County.

Action by Leon Mutchnick and another against Charles Friedman and another. From a judgment dismissing the complaint at the close of plaintiffs' case, plaintiffs appeal. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and CLARKE, JJ.

Jacob Friedman, for appellants.
Aaron W. Levy, for respondents.

INGRAHAM, J. This action was brought to recover commissions on the sale of real property. The complaint was dismissed on the ground that there was no proof that the plaintiffs were the procuring cause of the sale of the property to the defendants.

Leon Mutchnick, one of the plaintiffs, testified: That he was a real estate broker. That in October, 1904, he had a conversation with the defendant Charles Friedman in relation to the property situate

---

*For other cases see same topic & § NUMBER in Dec. & Am.·Digs. 1907 to date, & Rep'r Indexes

on 112th street 100 feet east of Second avenue. That plaintiff told Friedman that the owner of the property wanted $39,000, but he would take less. Friedman said he would consider it. Subsequently the owner told the plaintiff that he would sell the parcel for $36,000 net, but would not pay commissions. That plaintiff told Friedman he would have to pay the commissions as the vendor would not, when defendant said: "I am satisfied. I will pay you the commissions." That two days afterwards the plaintiff went to the defendant, and said he could get the parcel for $36,000, and defendant said he would consider it. That he was willing to pay the plaintiff the commission in case he bought the parcel. That plaintiff again saw Friedman, and asked him whether he would buy this parcel, and Friedman said:

"Keep your hands off. You don't worry. If I will buy this parcel, if I will have the parcel in my name, but another people will buy in his name, you will have the commission, don't worry."

Nothing else was said at that time. Subsequently the plaintiff saw Friedman at the Real Estate Exchange, and asked him whether he had bought the parcel, and Friedman said:

"You don't worry; a hundred dollars—I will give you a hundred dollars."

Plaintiff then said he did not want charity, but wanted what was coming to him. The plaintiff next saw Friedman about two months afterwards and again asked defendant if he had bought the parcel, when Friedman said, "Yes; come over to my brother, and we will settle up this matter"; that Friedman subsequently said that Jackson & Stern had bought the parcel, and he would not give the plaintiff a cent. Plaintiff's story is most confused, but I have extracted what he seems to have intended to swear to. A contract was then introduced in evidence dated October 28, 1904, between the owner of the property and Jackson & Stern, for a sale of this property for $34,600. By this contract the purchaser agreed to pay a broker's commission to one Pucci. There was also another contract dated November 2, 1904, by which Jackson & Stern agreed to sell to the defendants the same property for $38,500, of which $500 only was paid in cash, and Jackson & Stern made a building loan contract with the defendants. On cross-examination the witness said: That he was first employed by the firm of Friedman & Feinberg, with which the defendants had no connection, to buy this parcel for $36,000. That the defendant Charles Friedman did not have anything to do with this original transaction. That afterwards when he went to see Friedman & Feinberg he had this talk with the defendant Charles Friedman. That at that time the plaintiff said to Charles Friedman that Charles' brother would not buy the property, but suggested that Charles buy it. That it was a good parcel for him. This was after the promise of Friedman & Feinberg to pay plaintiff a commission if he got the property for them. That Charles Friedman said that he would pay plaintiff commission in case he bought it for $36,000.

The plaintiff then called one Jackson, who testified that he purchased the property from the vendor, and that one Pucci was the broker in that transaction; that he purchased the property and paid

to Pucci a commission of $50; that he paid $34,500 for the property; that Pucci was working at the time as an excavator for the defendant Charles Friedman. Jackson further testified that, after he made the contract for the purchase of the property for $34,600, he opened negotiations with the defendants to sell the property to them; that he did not purchase the property for the defendants, and did not buy it at their request, but bought it for himself, and subsequently sold it to the defendants on his own account. This was the plaintiff's testimony.

The only ground upon which there can be recovery in this case is based upon the promise of the defendant Charles Friedman to pay the plaintiff a commission in case he bought the property. He and his brother ultimately did buy the property, and I am inclined to think that there was sufficient evidence of an express promise to go to the jury. The facts to which the plaintiff testified are that he offered this property to the firm of Friedman & Feinberg for $39,000, with a statement that the vendor would pay no commissions; that Friedman & Feinberg offered $36,000 for the property; that subsequently plaintiff obtained an offer to sell it for $36,000, but that Friedman & Feinberg refused to carry out the contract; that he subsequently offered the property to the defendant Charles Friedman, who promised him that, if he purchased the property, he would pay plaintiff the commission; that subsequently the property was purchased by Jackson & Stern, and immediately afterwards purchased by the defendants at an advance of several thousand dollars and a building loan. I am inclined to think that there was evidence here of a special contract.

The judgment should therefore be reversed, and a new trial ordered, with costs of the appeal to the appellants to abide the event. All concur.

